# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JANE DOE, an individual Michigan resident
filing anonymously under a fictitious name,

      Plaintiff,

v.

      Case No.
      Hon.

MAMOUN DABBAGH, M.D.,

      Defendant.

_____

Nakisha N. Chaney (P65066)
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, Michigan 48104
(734) 663-7550
_____/

## COMPLAINT AND JURY DEMAND

Pursuant to the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595, Plaintiff JANE DOE brings this action against Defendant MAMOUN DABBAGH, M.D. Dr. Dabbagh knowingly benefitted from participation in a venture that he knew or should have known involved human trafficking. Dr. Dabbagh provided to sex trafficker Mark L. White prescriptions in Plaintiff's name for psychotropic medications that White used to drug Plaintiff and facilitate his ability to traffic her.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a female survivor of a human trafficking enterprise in which trafficker Mark L. White forced Plaintiff to ingest psychotropic medications to alter Plaintiff's mental and physical states and to facilitate his control over Plaintiff.

2. Defendant Mamoun Dabbagh, M.D. is a Michigan-licensed psychiatrist who provided prescriptions to White in Plaintiff's name for psychotropic medications that Dr. Dabbagh knew White intended to use to medicate Plaintiff.

3. A substantial part of the events giving rise to this complaint occurred in Southfield, Wayne County, Michigan, and the surrounding area.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 18 U.S.C. § 1595.

5. Venue is in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

### Plaintiff Is Ensnared in a Human Trafficking Ring

6. Mark L. White was a known sex trafficker.

7. In 2006, White was convicted for his role in a criminal sex enterprise and sentenced to several years in federal prison.

8. Upon his release, White again became involved with a human trafficking enterprise with connections in metro-Detroit, Chicago and Hawaii.

9. To facilitate his enterprise, White operated at least two businesses, respectively named "Sizzling Hot Entertainment" and "Starz Entertainment."

10. In July or August of 2012, White approached Plaintiff in a luxury high-rise elevator. Noting that Plaintiff was a masseuse, White told Plaintiff that he had a business opportunity and asked her to contact him.

11. Plaintiff later contacted White.

12. In meeting with Plaintiff, White told Plaintiff that she could provide therapeutic prostate massages and assured her that the massages were legal and served a medical purpose.

13. After developing literature regarding the massages, White took photos of Plaintiff staged in the bedroom and posted them in advertisement for services on multiple websites, including on Backpage.

14. White compelled Plaintiff to stay with him in his condo.

15. When Plaintiff challenged White's directions, she was beaten or threatened with harm.

16. Shortly thereafter, White began selling Plaintiff for labor and sex.

17. From February to May 2013, White forced Plaintiff to provide sex and massage services to hundreds of men at various hotels in the metro-Detroit area, netting White thousands of dollars every week.

18. White coerced Plaintiff's compliance through beatings, rape, threats of harm to Plaintiff and others, threats to set her up for a crime, and forced ingestion of medication, including prescription psychotropic drugs.

19. Attempts by Plaintiff to resist or refuse White's demands resulted in brutal punishment.

20. By way of example, White required Plaintiff to wear high heels everywhere she went. On one occasion, Plaintiff was in the car and she kicked off the shoes. White demanded that Plaintiff put the shoes back on. She refused to do so, saying that they hurt her feet. White demanded Plaintiff to get out of the car, which she did. He retrieved a bat and beat her with it on her back. He then remarked in the same or substantially similar words, "Now your feet and back hurt."

21. On an occasion, Plaintiff told White that she wanted to go home and did not want to perform services for men anymore. In response, White grabbed her by the hair with one hand and punched her face with the other. The struggle resulted in White pulling out clumps of Plaintiff's hair.

22. On another occasion, Plaintiff told White that she did not want to stay another week at a hotel where she was forced to provide services to multiple men. White responded by punching her and knocking her to the curb where she hit her face.

23. On another occasion, Plaintiff failed to recite verbatim a prepared script that she was to follow in response to inquiries by men for her services. White responded by striking Plaintiff in the chest and knocking the wind out of her.

24. In addition to the beatings, rapes and threats, White forced Plaintiff to take Adderall and other pills to alter Plaintiff's mental and physical states and to facilitate his control over Plaintiff.

25. Adderall is a controlled stimulant with addictive qualities and a high risk of dependence.

26. It is classified by the Drug Enforcement Administration as a Schedule II drug, which is characterized as having a high potential for abuse, with use potentially leading to severe psychological or physical dependence.

27. Like cocaine and ecstasy, Adderall affects the brain's dopamine circuitry. It is also sold on the street in the illegal drug trade.

28. In sufficient doses, Adderall can alter a person's moods and activities, including stimulating a person to physically and mentally continue performing despite otherwise being exhausted.

29. White made Plaintiff take these medications, and when he determined that the drugs were not having the intended effect, he made her take more.

30. Through use of these drugs and other coercive tactics, White compelled Plaintiff to provide sexual and massage services for up to a dozen men a day, for five to seven days a week.

31. When Plaintiff was not working, White harbored her in his condo in Southfield, Michigan.

32. On one occasion, a woman who was part of White's enterprise came to White's home to bring Plaintiff "work purses" that she would use when she was being trafficked. With reference to Plaintiff, the woman commented to White, "Why isn't her ass beat yet?"

**Defendant Mamoun Dabbagh, M.D.**

33. Defendant Mamoun Dabbagh, M.D. facilitated White's ability to drug Plaintiff by providing to White prescriptions for psychotropic medications in Plaintiff's name.

34. Dabbagh has been a licensed physician in the State of Michigan since 1982.

35. Upon information and belief, Dabbagh is a psychiatrist with an extensive background in the use of psychotropic medications.

**Dabbagh Provided Prescriptions for Psychotropic Medications to Trafficker Mark White**

36. Dabbagh knew Plaintiff's trafficker, Mark White.

6

37. Dabbagh resided in the same building in which White lived and held Plaintiff.

38. Plaintiff observed Dabbagh and White converse multiple times while she was being held and trafficked by White.

39. On two specific occasions, Plaintiff witnessed White and Dabbagh talking in the parking deck of their apartment building. Plaintiff accompanied Dabbagh and White as they walked from the parking deck into the building. Both times, Plaintiff was dressed in high heels and provocative clothing.

40. Plaintiff was not permitted to speak to Dabbagh and remained silent during the interactions.

41. In March 2013, White contacted Dabbagh by cell and asked him to come up to his personal residence.

42. Dabbagh came to the condo as requested.

43. In the living room area in which Dabbagh sat, there were in plain view approximately a half-dozen photos of White dressed in brightly colored suits and posing with multiple scantily-clad women. One such photo was on the table directly in front of where Dabbagh was sitting.

44. Also within Dabbagh's line-of-sight from the couch on which he sat was a DVD rack holding multiple DVDs about pimping.

45. Although Plaintiff was present and the conversation regarded Dabbagh providing prescriptions in Plaintiff's name, White controlled the conversation while Plaintiff largely sat silent as she was instructed to do.

46. White told Dabbagh that he was giving Plaintiff his own medications and that he needed separate medication for Plaintiff.

47. When Dabbagh asked Plaintiff if she lived there, White answered for Plaintiff falsely telling Dabbagh that she did not.

48. White also retrieved Plaintiff's driver's license for Dabbagh.

49. Despite the obvious signs that White was controlling Plaintiff in a pimping operation, Dabbagh provided to White prescriptions in Plaintiff's name for Celexa and Adderall.

50. Plaintiff was not and has never been Dabbagh's patient.

51. Plaintiff never saw Dabbagh at his office.

52. Plaintiff never asked Dabbagh for any medication or treatment.

53. At no time did Dabbagh ask Plaintiff questions regarding her physical or mental health, nor did he evaluate Plaintiff.

54. White went into another room, retrieved money, and approached Dabbagh with the money, indicating that the money was for Dabbagh.

55. Dabbagh told White not to fill the prescriptions at CVS and advised him that he could get the pills the cheapest at Costco.

56. Dabbagh left shortly thereafter.

57. White filled the prescriptions and compelled Plaintiff to regularly ingest the pills.

58. As discussed above, Adderall is a controlled stimulant with addictive properties.

59. Celexa is an anti-depressant that can, among other things, cause emotional numbness.

60. Neither drug would be prescribed to a patient without a psychiatric and medical assessment.

61. The prescription of these medications in a private home, on the request of a third-party, and in an abusive or controlling situation is not customary psychiatric practice.

**Plaintiff Escaped and White Committed Suicide**

62. In or around May 2013, Plaintiff learned that White intended to transport her to Hawaii where he would continue to traffic her.

63. Plaintiff determined to escape and, in early May 2013, she contacted law enforcement.

64. On May 7, 2013, the Southeast Michigan Crimes Against Children Task Force, which is comprised of members from the Southfield Police Department

and FBI and which was investigating an ongoing human trafficking enterprise in southeast Michigan, executed a search warrant at White's home.

65. Upon their entry, White committed suicide.

66. Among the items taken from White's residence were multiple pimp DVDs and multiple prescription medications.

## CLAIM FOR RELIEF

### COUNT I
### TVPRA of 2008
### Knowingly Benefitting from Participation
### in Venture Involving Human Trafficking
### 18 U.S.C. § 1595

67. Plaintiff incorporates all previously stated allegations.

68. Plaintiff brings this claim against Dabbagh under 18 U.S.C. § 1595 of the Trafficking Victims Protection Reauthorization Act for knowingly benefitting from participation in a venture in which he knew or should have known involved a violation of Chapter 77 of Title 18 of the United States Code.

69. Plaintiff was a victim of a sex and labor trafficking venture. Specifically,

a. in violation of 18 U.S.C. §§ 1590 and 1591, White fraudulently recruited, as well as harbored, transported and provided Plaintiff to engage in commercial sex acts by means of actual and threatened physical force, actual and threatened harm,

threatened abuse of the legal process, forced medication and other means of force, fraud and coercion;

    b. in violation of 18 U.S.C. §§ 1589 and 1590, White fraudulently recruited, as well as harbored, transported and provided Plaintiff for forced labor by means of actual and threatened physical force, actual and threatened harm, threatened abuse of the legal process, forced medication and other means of force, fraud and coercion; and

    c. in trafficking Plaintiff, White acted in concert with others including a female who supplied Plaintiff with work purses and associates who, upon information and belief, are located in metro-Detroit, Chicago and Hawaii.

70. Dabbagh knowingly benefitted from participation in the venture by providing to White, in exchange for money and other benefits, prescriptions for psychotropic medications that Dabbagh knew White intended to use to medicate Plaintiff.

71. Dabbagh knew or should have known that the venture he was participating in involved activity that violated 18 U.S.C. §§ 1589, 1590 and 1591 for the following reasons:

    a. Dabbagh shared an apparent business and social relationship with White, a known pimp who openly flaunted his control over the women that he prostituted.

b. Dabbagh and White's relationship is evidenced by Dabbagh and White's several conversations witnessed by Plaintiff, White's knowledge of Dabbagh's phone number, and Dabbagh's willingness to come to White's home at White's request to provide prescriptions for psychotropic medications in Plaintiff's name.

c. Evidence of White's pimping operation were open and obvious to Dabbagh when he went to White's home to provide the prescriptions. This includes multiple pictures showing White dressed in clothing characteristic of pimps and posing with multiple scantily-clad women, as well as multiple DVDs on pimping that were within Dabbagh's line of sight.

d. Evidence of White's control over Plaintiff was obvious to Dabbagh, particularly given his training and experience as a psychiatrist. During the conversation regarding the prescription of psychotropic medications, Plaintiff largely sat silent while White did all the talking, White answered questions for Plaintiff, White obtained Plaintiff's driver's license to provide to Dabbagh, and White handled the transaction. Likewise, during earlier conversations in which Plaintiff, White and Dabbagh were present, Plaintiff largely did not speak at all. White did all of the talking.

e. Dabbagh knew that White intended to have Plaintiff take the pills because White told Dabbagh that he had been giving Plaintiff his own pills and now he wanted pills prescribed in Plaintiff's name. Dabbagh's knowledge of White's intent

to medicate Plaintiff was also evidenced by Dabbagh's advice to White regarding where to take the prescriptions for the cheapest price and his caution that White should avoid CVS pharmacy.

f. Dabbagh was aware of the psychotropic and physical effects of the medications he prescribed as he has been a licensed psychiatrist for many years and is experienced in the prescription of psychotropic medications.

g. Dabbagh's provision of prescriptions for psychotropic medications under the circumstances described herein evidences known or reckless involvement in illicit activity.

72.  Dabbagh's provision of prescription medication to White facilitated White's ability to control and traffic Plaintiff because, among other things, the drugs had mood and activity altering effects and White forced Plaintiff to ingest them.

73.  Plaintiff suffered and continues to suffer significant harm as a result of Dabbagh's misconduct, including physical, mental and sexual abuse while being trafficked; humiliation and degradation; physical, psychological and emotional effects of the drugs; fear; distrust; anger; frustration; and other psychological and emotional harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court will enter an order awarding Plaintiff:

a. economic damages;

b. noneconomic damages for the fear, psychological abuse, severe emotional distress and other harm she suffered;

c. liquidated and punitive damages as permitted by law;

d. costs and attorney fees incurred in seeking redress;

e. all relief that this Court deems just and equitable.

Respectfully submitted,
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.

Dated:    February 26, 2015

/s/Nakisha N. Chaney
Nakisha N. Chaney (P65066)
Attorney for Plaintiff
101 N. Main Street, Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
*nchaney@nachtlaw.com*

## JURY DEMAND

Plaintiff demands a trial by jury in the above-captioned matter.

                                           Respectfully submitted,
                                           NACHT, ROUMEL, SALVATORE,
                                           BLANCHARD & WALKER, P.C.

Dated: February 26, 2015            /s/Nakisha N. Chaney
                                           Nakisha Chaney (P65066)
                                           Attorney for Plaintiff
                                           101 N. Main Street, Suite 555
                                           Ann Arbor, Michigan 48104
                                           (734) 663-7550
                                           *nchaney@nachtlaw.com*